UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODERICK BROWN,

       Plaintiff,                 CIVIL ACTION NO. 17-cv-10163

       v.                     DISTRICT JUDGE SEAN F. COX

HSBC BANK USA, NA,           MAGISTRATE JUDGE MONA K. MAJZOUB

       Defendant.

_____/

## REPORT AND RECOMMENDATION

On January 18, 2017, Plaintiff Roderick Brown commenced this *pro se* action against Defendant HSBC Bank, USA, as Indenture Trustee of the FRB Securitization Trust 2005-2 Callable Mortgage Backed Notes Series 2005-2 ("Defendant HSBC").   (Docket no. 1.) Plaintiff's claims arise from the foreclosure and sheriff's sale (to Defendant HSBC) of his home in Oakland Township, Michigan, on November 15, 2016.  (*Id.* at 5.)  At the time of the foreclosure, Plaintiff was attempting to work with his mortgage servicer to have his loan modified.  The foreclosure was later rescinded, and Defendant HSBC recorded an affidavit to expunge the sheriff's deed and to restore Plaintiff's original mortgage.  (*Id.* at 5, 18.)

Plaintiff alleges that the foreclosure violated a number of state and federal statutes, including the Michigan foreclosure by advertisement statute (M.C.L. § 600.3204), the "Consumer Financial Protection Bureau (CFPB) and Dodd-Frank Wall Street Reform Statutes," the "Home Affordable Modification Program (HAMP) Statutes," the "National Homeowners Bill of Rights of 2014 H.R. 4963 Statutes," the "Office of the Comptroller of the Currency (OCC) Statutes," the "Real Estate Settlement Procedures Act (RESPA) Statutes," the "National

Mortgage Settlement (NMS) Statutes," and the "Truth in Lending Act and the Home Ownership and Equity Protection Act (HOEPA) Statutes."  (*Id.* at 4.)  He also alleges Defendant HSBC engaged in "dual tracking," "negligent loss mitigation," "robo-signing," "slander of credit," as well as fraud, predatory lending, negligent misrepresentation, breach of contract, and breach of the covenant of good faith and fair dealing.  (*Id.* at 5.)

This matter comes before the Court on two motions: (1) Defendant HSBC's Motion to Dismiss, filed February 20, 2017 (docket no. 9), and (2) Plaintiff's Amended Motion for Leave to Amend Complaint to Add Necessary Parties, filed May 30, 2017 (docket no. 21, the "Motion to Amend").[1]  Plaintiff filed a Response to Defendant HSBC's Motion to Dismiss (docket no. 13), and Defendant HSBC filed a Reply (docket no. 16).  Defendant HSBC filed a Response to Plaintiff's Motion to Amend (docket no. 24), and Plaintiff filed a Reply (docket no. 25).  Both motions have been referred to the undersigned for consideration.  (Docket nos. 12, 22.)  The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f), and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion to Amend (docket no. 21) be **GRANTED**.  If the Court accepts this recommendation, Plaintiff should be ordered to file his Proposed Amended Complaint at docket no. 21-9 (with any applicable exhibits) as a separate docket entry within seven days of the Court's decision, and should be ordered to serve the new defendants (Specialized Loan Servicing LLC, Computershare USA, and JPMorgan

---

[1] Plaintiff previously filed a Motion for Leave to Add Necessary Defendants (docket no. 17), which he amended in docket no. 21.  Plaintiff has not withdrawn the prior Motion for Leave to Add Necessary Defendants, and the undersigned will therefore deny it as moot.  References in this Report and Recommendation to the "Motion to Amend" refer to the Amended Motion to Amend at docket no. 21.

Chase Bank, NA) within 90 days of the Court's decision, pursuant to Federal Rule of Civil Procedure 4(m).

It is further recommended that Defendant HSBC's Motion to Dismiss (docket no. 9) be **GRANTED IN PART and DENIED IN PART**.  Specifically, to the extent Defendant HSBC seeks dismissal of all claims against it, the Motion should be granted.  To the extent Defendant HSBC seeks dismissal of the matter in its entirety, the Motion should be denied, as the undersigned recommends that Plaintiff be permitted to proceed against Specialized Loan Servicing LLC, Computershare USA, and JPMorgan Chase Bank, NA on Counts 2 and 5 of his proposed amended complaint.

## II.    REPORT

### A.    Background

As stated above, this matter arises from Defendant HSBC's foreclosure of Plaintiff's home in Oakland Township, Michigan, on November 15, 2016.  (Docket no. 1 at 5.)  At the time, Plaintiff was attempting to work with his mortgage servicer, Specialized Loan Servicing LLC, to modify his mortgage in order to avoid foreclosure.  (*Id.*)

Plaintiff originally granted the mortgage on March 3, 2005, to Mortgage Electronic Registration Systems, Inc. ("MERS"), "acting solely as a nominee" for Encore Credit Corp. (Docket no. 9-1 at 3, 16.)[2]  The mortgage is recorded in the Oakland County Register of Deeds. On December 22, 2014, MERS executed and also recorded in the Oakland County Register of Deeds an Assignment of Mortgage to Defendant HSBC.  (Docket no. 9-2.)  The Assignment of

---

[2] Docket no. 9-1 is a copy of Plaintiff's original mortgage, which is a matter of public record.  "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

Mortgage instructs, "Contact JPMorgan Chase Bank, N.A. for this instrument . . . which is responsible for receiving payments." (*Id.*)

Through his Motion to Amend, Plaintiff asserts that JPMorgan Chase Bank "assigned the Plaintiff's mortgage loan out of MERS on January 8, 2015 and no assignment was ever created or recorded to the new servicer, Specialized Loan Servicing, LLC." (Docket no. 21 at 3.) Plaintiff also alleges that JPMorgan Chase "reportedly service released Plaintiff[']s loan" to Specialized Loan Servicing, LLC ("SLS"), on April 1, 2015, but, again "never completed the legal documentation." (*Id.*) Plaintiff states that his loan was reflected as "inactive" on MERS at the time of the foreclosure, which, Plaintiff argues, "means that the debt has been paid in full." (*Id.*)

Regardless, it is clear that at some point SLS began servicing Plaintiff's loan, Plaintiff fell behind on his payments, and Plaintiff began attempting to modify his loan to avoid foreclosure. Defendant HSBC initiated foreclosure proceedings in the Summer of 2016, but the foreclosure never occurred. (Docket no. 9-3, affidavit of publication regarding foreclosure.) According to documents attached to the original Complaint, in July 2016, Plaintiff accepted SLS's offer of a three-month Home Affordable Modification Program due to his unemployment, but asked that the three-month period be extended to six months to one year. (Docket no. 1 at 59.) Plaintiff claims that he never received a response, and so he continued to request an extended unemployment forbearance or modification. (*Id.*) Eventually, SLS acknowledged the request, but review of the request was "manually cancelled" in October 2016. (Docket no. 14 at 52.) Shortly thereafter, Defendant HSBC again initiated foreclosure proceedings, and Plaintiff's property was sold to Defendant HSBC for $325,828.20 on November 15, 2016.[3] (Docket no. 9-3

---

[3] In his original Complaint, Plaintiff alleged that Defendant HSBC "wrongfully sold the home of Roderick Brown . . . at a Sheriff's sale in Oakland County Michigan." (Docket no. 1 at 5.)

at 2.)  The Sheriff's Deed evidencing the sale was recorded on December 12, 2016.  (Docket no. 9-3.)

On January 3, 2017, Defendant HSBC recorded an "Affidavit to Expunge Sheriff's Deed," which provides that "the Sheriff's Deed is invalid and should be Expunged to allow time for re-review of forbearance plan."  (Docket no. 9-5 at 2.)  The Affidavit further provides that, "the Sheriff's Deed recorded December 12, 2016, . . . is void and of no effect and the mortgage recorded March 31, 2005, . . . is hereby restored to its condition, validity and priority as it existed immediately prior to sale."  (*Id.*)

On January 18, 2017, Plaintiff filed the instant lawsuit, naming only HSBC as a defendant.  (Docket no. 1).  Two days later, SLS notified Plaintiff that he qualified for a loan modification.  (Docket no. 21-7.)  On February 10, 2017, Defendant HSBC filed a Motion to Dismiss.  (Docket no. 9.)  Plaintiff now seeks to amend his Complaint to add SLS, Computershare USA (a company affiliated with SLS), and JPMorgan Chase Bank as defendants to this action.  (Docket no. 21.)  Other than adding the new defendants, Plaintiff's proposed amended complaint does not differ from his original Complaint in any significant substantive way.  (*Compare* docket no. 1 *with* docket no. 21-9.)  Defendant argues that Plaintiff's Motion to Amend should be denied, and the entire case dismissed, even as to the new, proposed defendants. (Docket no. 21 at 3.)

**B.    Governing Law**

Federal Rule of Civil Procedure 15(a) provides that a "party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (3), or (f), whichever is earlier."  Fed. R. Civ. P.

5

15(a)(1)(A)-(B).   Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave.   The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

Factors relevant to the determination of whether to permit an amendment include "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment."  *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001).   "Although Rule 15(a) indicates that leave to amend shall be freely granted, a party must act with due diligence if it intends to take advantage of the Rule's liberality."  *U.S. v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995) (citation omitted).   "Delay alone . . . does not justify the denial of leave to amend.  Rather, the party opposing a motion to amend must make some significant showing of prejudice to prevail."  *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995).

To determine whether an amendment would be futile, the Court determines whether the amendment could survive a motion to dismiss pursuant to Rule 12(b)(6).  *Thiokol Corp. v. Dep't of Treasury, Mich. Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir. 1993).   When deciding a motion under Rule 12(b)(6), the court must construe "the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002) (citation omitted).   To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and

emphasis omitted); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

### C.    Analysis

The two motions before the court are intertwined: Defendant HSBC contends that Plaintiff's Motion to Amend should not be granted because the claims Plaintiff asserts in his original Complaint should all be dismissed, and Plaintiff should therefore not "be permitted to expand the scope of his already frivolous Complaint" by adding SLS, Computershare USA, and JPMorgan Chase Bank as defendants to this action.  (Docket no. 21 at 14.)

The undersigned has reviewed all of the relevant pleadings, and concludes that Plaintiff should be permitted to amend his Complaint to add the new defendants.   One of Defendant HSBC's arguments concerning why Plaintiff's claims should be dismissed under Rule 12(b)(6) applies to Defendant HSBC, but not to SLS, Computershare, and JPMorgan.   Specifically, Defendant HSBC argues that Plaintiff's "dual tracking"[4] claim should be dismissed because only loan servicers can be held liable under the anti-dual tracking regulation, 12 C.F.R. 1024.41, and Defendant HSBC was not the loan servicer.   (*See* docket no. 9 at 18–20.)   The new defendants however, *do* appear to be loan servicers.

Many of the counts in the proposed amended complaint should nevertheless be dismissed as to Defendant HSBC as well as the new defendants; the undersigned addresses each count in the proposed amended complaint below.

---

[4] As courts in this district have explained:

> Dual tracking refers to a common tactic by banks that institute foreclosure proceedings at the same that a borrower in default seeks a loan modification.  The result is that the borrower does not know where he or she stands, and by the time foreclosure becomes the lender's clear choice, it is too late for the borrower to find options to avoid it.

*Kloss v. RBS Citizens, N.A.*, 996 F. Supp. 2d 574, 585 (E.D. Mich. 2014).

### Count 1 – Wrongful Foreclosure

In Count 1, Plaintiff alleges that Defendants wrongfully foreclosed on Plaintiff's property in violation of Michigan's foreclosure by advertisement statute, M.C.L. § 600.3204.[5]

M.C.L. § 600.3204(c) provides that a party who forecloses on a mortgage must be "either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage." *See also Residential Funding Co., L.L.C. v. Saurman*, 805 N.W.2d 183, 184 (Mich. 2011) (mem.) (The Michigan Legislature's "use of the phrase 'interest in the indebtedness' to denote a category or parties entitled to foreclose by advertisement indicates the intent to include mortgagees of record among the parties entitled to foreclose by advertisement, along with parties who 'own[] the indebtedness' and parties who act as 'the servicing agent of the mortgage.'").   Subsection (d)(3) further provides that if the person foreclosing "is not the original mortgagee, a record chain of title must exist before the date of sale . . . evidencing the assignment of the mortgage to the party foreclosing the mortgage." M.C.L. § 600.3204(d)(3).

Defendant HSBC has produced the original mortgage from Plaintiff to MERS (docket no. 9-1), and the recorded Assignment of Mortgage from MERS to Defendant HSBC.  (Docket no. 9-2.)   Thus, Defendant HSBC has produced a "record chain of title . . . evidencing the assignment of the mortgage to the party foreclosing the mortgage."   M.C.L. § 600.3204(d)(3). The other requirements for a foreclosure by advertisement—that a default in the mortgage has occurred and that an action at law to recover the debt is not currently pending (*see* M.C.L. §

---

[5] Plaintiff doesn't specifically cite M.C.L. § 600.3204 (or any statute) in Count 1, but he cites it elsewhere in his proposed amended complaint. (*See* docket no. 21-9 at 5.)  The allegations in Count 1 concern chain of title issues, and M.C.L. § 600.3204(d)(3) requires a record chain of title before foreclosure by advertisement can take place.  Moreover, Plaintiff's federal law claims are addressed in other counts.  The undersigned therefore interprets Count 1 as alleging a violation of M.C.L. § 600.3204.

600.3204(a)–(b)) —are not in dispute, and therefore the undersigned recommends that this count be dismissed as to Defendant HSBC.  Moreover, because it was Defendant HSBC that initiated the foreclosure proceedings and purchased the property at the foreclosure sale, Plaintiff should not be permitted to proceed against the proposed defendants on this count.

Plaintiff contends that "[t]he Defendants never completed the update of the Assignment of Mortgage with the Register of Deeds in Oakland County, MI and never updated the MIN status information in MERS."  (Docket no. 21-9 at 5–6.)  Plaintiff is simply incorrect about the Assignment of Mortgage with the Register of Deeds in Oakland County, MI, as Defendants have produced the recorded Assignment.  And, Plaintiff does not explain the significance of the alleged discrepancy in the MERS records, or how it would affect the record chain of title, which the undersigned finds is established by the properly recorded original Mortgage and Assignment of Mortgage.

It is worth noting that Defendants argue the wrongful foreclosure claim is moot because the foreclosure was rescinded.  (Docket no. 9 at 18.)  The undersigned disagrees with this argument, because Plaintiff has asked for monetary damages associated with the foreclosure, including expenses he allegedly incurred as a result of stress-induced medical conditions caused by the foreclosure.  (Docket no. 21-9 at 19.)

### Count 2 – "Dual Tracking"

Plaintiff next asserts that Defendant HSBC, and proposed defendants SLS and Computershare USA "participated in dual tracking in violation of federal statutes."  (Docket no. 21-9 at 7.)  Specifically, Plaintiff alleges that a non-party law firm, which had been retained by Defendant HSBC, SLS, and Computershare, "was constantly sending foreclosure sales dates while the loss mitigation [mortgage loan modification] process was not completed."  (Docket no.

21-9 at 7.)  Plaintiff argues in his Response to Defendant HSBC's Motion to Dismiss, that this alleged dual tracking "violated Title X of the Dodd-Frank Act" (docket no. 14 at 9), promulgated as part of an amendment to the Real Estate Settlement Procedures Act in 2014.  *See Schmidt v. PennyMac Loan Services, LLC*, 106 F. Supp. 3d 859, 866–67 (E.D. Mich. May 2015) (citing *Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X)*, 78 Fed. Reg. 10,696; 10, 696 (Feb. 14, 2013) (codified at 12 C.F.R. pt. 1024)).

Regulation X prohibits, "among other things, a loan servicer from foreclosing on a property in certain circumstances if the borrower has submitted a complete loan modification, or loss mitigation, application."  *Cooper v. Fay Servicing, LLC*, 115 F. Supp. 3d 900 (S.D. Ohio July 2015) (citing 12 C.F.R. § 1024.41(g).  It provides that a "borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f))."  12 C.F.R. § 1024.41(a).  The applicable provisions of RESPA, however, only apply to mortgage servicers. *See* 12 U.S.C. § 2605(k)(1) ("A *servicer* of a federally related mortgage shall not-- . . . (E) fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." (emphasis added)).  This is evident from the plain language of the applicable provisions of RESPA, and from the plain language of Regulation X, which sets forth detailed procedures for "servicers" to follow when a borrower submits an application to modify a mortgage loan. Defendant HSBC cites cases from outside of the Sixth Circuit which confirm that the provisions of RESPA apply only to mortgage servicers, and not to mortgage holders.  (Docket no. 9 at 19– 20 (citing, *inter alia*, *Hawk v. Carrington Mortgage Services, LLC*, No. 3:14-1044, 2016 WL 4414844, at *4 (M.D. Pa. June 23, 2016) (citations omitted), *R&R adopted*, 2016 WL 4433665 (M.D. Pa. Aug. 17, 2016); *Green v. Cent. Mortgage Co.*, 148 F. Supp. 3d 852, 877 (N.D. Cal.

2015) (citations omitted) ("The defendants make several arguments with regard to [the plaintiff's RESPA regulation] claim.  First, they point out that the regulations . . . apply only to loan servicers and do not apply to beneficiaries such as Deutsche Bank.  They are correct.")  The undersigned is persuaded by the reasoning in these cases.

It is undisputed that Defendant HSBC was not servicing Plaintiff's loan at the time of the foreclosure or when Plaintiff was attempting to modify his loan prior to the foreclosure.  Because the applicable provisions of RESPA and Regulation X apply only to mortgage servicers, Plaintiff's Count 2 should be dismissed as to Defendant HSBC.

The defendants Plaintiff proposes to add, however, *are* mortgage loan servicers.  Viewing the facts in the light most favorable to Plaintiff, it is possible that Plaintiff has a viable claim against these defendants for a violation of Regulation X (12 C.F.R. § 1024.41), and RESPA (26 U.S.C. § 2605).  The undersigned therefore recommends that Count 2 survive as to the proposed defendants.

### Count 3 – Fraud

In Count 3, Plaintiff alleges that "JP Morgan Chase Bank, NA [sic] confirmed that the legal transaction between [Defendant HSBC, SLS, and Computershare] never happened when the JP Morgan Chase Bank NA sold the loan on April 1, 2015.  JP Morgan Chase Bank NA and [SLS] are currently working together to correct the legal documents."  (Docket no. 21-9 at 8.)  Plaintiff argues that the "Court needs to investigate this and the associated penalties," particularly in light of the fact that all of the defendants allegedly "have addresses at the same location in Highlands Ranch, CO," which, Plaintiff contends "raises a question about the existence of fraudulent activity."  (*Id.* at 8–9.)

Federal Rule of Civil Procedure 9(b) imposes an obligation on any plaintiff alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake."  To meet the particularity requirement of Rule 9(b), the plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Frank v. Dana Corp.*, 547 F.3d 564, 569–70 (6th Cir. 2008) (citation and internal quotation marks omitted).  At a minimum, the plaintiff "must allege the time, place and contents of the misrepresentations upon which [he] relied."  *Id.*  The plaintiff also "must allege facts from which it could be concluded that [his] reliance was reasonable."  *Issa v. Provident Funding Grp., Inc.,* No. 09-12595, 2010 WL 538298, at *5 (E.D. Mich. Feb. 10, 2010) (citing *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 554–54 (Mich. Ct. App. 1999)).  "The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation, allowing the defendant[] to answer, addressing in an informed way the [plaintiff's] claim of fraud."  *Kashat v. Paramount Bancorp, Inc.*, No. 09-10863, 2010 WL 538295, at *4 (E.D. Mich. Feb. 10, 2010) (citation omitted; alterations in original) (dismissing the plaintiffs' complaint because it did "not contain allegations concerning the time and place of the alleged misrepresentations").

In his proposed amended complaint, Plaintiff fails to identify any statements or representations made by Defendant HSBC, SLS, or Computershare.  He does state that JPMorgan Chase "confirmed that the legal transaction" between the other defendants "never happened," but he fails to explain why that "confirmation" is fraudulent.  Instead, he cites a 2010 publication from "Fraud Digest," which generally states that "[i]f a Mortgage Assignment is dated, notarized and filed in a year after the year set forth in the name of the grantee trust on the Assignment, it is actually an Assignment specially, and in many cases, fraudulently, made to

facilitate foreclosures." [6]  (Docket no. 14 at 29.)  The publication does not specifically reference Plaintiff's mortgage; it generally discusses lending practices which, the author argues, have caused problems for title and mortgage trust companies.  (*Id.* at 31.)  Plaintiff fails to explain the relevance of the article or whether Defendant HSBC (or any of the proposed defendants) engaged in the activities discussed therein.  Thus, Plaintiff's proposed amended complaint fails to meet the particularity requirements of Rule 9(b) with regard to Count 3.  The undersigned recommends that Count 3 be dismissed as to Defendant HSBC, and that Plaintiff not be allowed to proceed on Count 3 against the proposed defendants.

### Count 4 – Negligent Loss Mitigation/Loan Modification Review

Plaintiff's Count 4 provides, in its entirety:

> On January 26, 2017, a letter was received from Specialized Loan Servicing indicating that the loss mitigation process was never completed in the initial review prior to the wrongful foreclosure sale.  They mentioned that no additional information was required.  The letter is a cover up for illegal activity and associated with fraud.

(Docket no. 21-9 at 9.)

To the extent that Plaintiff is attempting to assert another fraud claim, such claim should fail for the same reason Count 3 should fail: Plaintiff fails to plead or explain why any statements made in the letter from SLS are fraudulent.  To the extent Plaintiff is attempting to assert a negligence claim in Count 4, such claim should fail because "a lender does not owe a duty of care to a loan applicant."  *Yaldu v. Bank of America Corp.*, 700 F. Supp. 3d 832, 846 (E.D. Mich. 2010) (applying Michigan law).   "And courts have expanded this rule to deny a duty of reasonable care in the loan modification context."  *Ross v. Fannie Mae*, No. 13-12656, 2014 U.S. Dist. LEXIS 99043, at *23–24 (E.D. Mich. July 22, 2014) (citing *Dingman v. OneWest Bank,*

---

[6] The undersigned notes that the trust identified in Plaintiff's Mortgage Assignment to Defendant HSBC is titled "the FBR securitization trust 2005-2, callable mortgage-backed notes, series 2005-2," and the Mortgage Assignment to Defendant HSBC occurred in 2014.  (Docket no. 9-2.)

*FSB*, 859 F. Supp. 2d 912, 921 (E.D. Mich. 2012); *Dorr v. Wells Fargo Bank, N.A.*, No. 13-14526, 2014 U.S. Dist. LEXIS 42040, at *22 (E.D. Mich. Mar. 3, 2014) (citations and internal quotation marks omitted), *R&R adopted by* 2014 U.S. Dist. LEXIS 41588 (E.D. Mich. Mar. 28, 2014)).

Plaintiff cites no law or facts suggesting a duty of care owed by Defendant HSBC or the other proposed defendants.  Thus, Plaintiff's Count 4 should be dismissed as to Defendant HSBC, and Plaintiff should not be allowed to proceed on Count 4 against the proposed defendants.

### Count 5 – Mortgage Servicing Fraud

In Count 5, Plaintiff argues that:

> If the Deed of Trust and the Note are not together with the same entity, then there can be no enforcement of the Note.  It provides the capability of the lender to foreclose on a property.  If the Deed is separate from the Note, the foreclosure cannot occur.  The Defendants had full knowledge of the improper documentation and made no attempt to make corrections until the Plaintiff made numerous inquiries nationally and internationally.  The Defendants violated the Fraud Enforcement and Recovery Act (FERA).

(Docket no. 21-9 at 10.)

Michigan law provides that "an entity has standing to foreclose upon properties for which it is the record-holder of the mortgage, even if it does not own the underlying debt." *Everbank v. Zeer*, No. 302239, 2012 WL 1890184, at *4 (Mich. Ct. App. May 24, 2012) (citing *Residential Funding Co., LLC v. Saurman*, 805 N.W.2d 183, 183–84 (Mich. 2011)); *see also Hargrow v. Wells Fargo Bank N.A.*, 491 Fed. App'x 534, 537 (6th Cir. 2012) ("The Hargrows maintain that the assignment of the Mortgage from MERS to Wells Fargo was invalid because a mortgage cannot be assigned without a corresponding assignment of the interest in the underlying debt.

We disagree, and so does the Michigan Court of Appeals."). Thus, Plaintiff's argument concerning the "separation" of the deed of trust and the note fails.

In Count 5, however, Plaintiff further contends that "Specialized Loan Servicing LLC and Computershare USA were never legally authorized to collect mortgage payments from the Plaintiff since legal documents were not completed according to federal and state law." (Docket no. 21-9 at 10.) The record does not contain any documentation showing the assignment of the mortgage servicing rights to SLS. Therefore, although the undersigned has some doubt about the viability of Count 5 as against SLS and Computershare (because Plaintiff did repeatedly contact SLS in an effort to modify his loan to avoid foreclosure), the undersigned recommends that Plaintiff be allowed to proceed on this claim against these proposed defendants. Count 5 should, however, be dismissed as against Defendant HSBC, which indisputably was not the loan servicer and therefore could not have committed "mortgage servicing fraud."

### Count 6 – Predatory Lending

In Count 6, Plaintiff alleges that Defendants engaged in predatory lending because they "would not reduce the interest rate of almost 7% with the understanding that the Plaintiff was seeking relief due to unemployment and underemployment issues. The Defendants violated HAMP statutes in this situation." (Docket no. 21-9 at 10.) As Defendant HSBC points out, Michigan law does not recognize a cause of action for predatory lending. *See Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 847 (E.D. Mich. 2010) (citing cases for the holding, and stating that it had "found no Michigan case that supports the plaintiff's theory of [predatory lending]."). *See also Harvey v. Ameriquest Mortg. Co.*, No. 10-12246, 2010 WL 4386976, at *4 (E.D. Mich. Oct. 29, 2010) (holding that no "predatory lending" cause of action exists in Michigan). Moreover, the HAMP statutes "do not create a private right of action under which Plaintiff may

seek relief." *Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010) (citations omitted).  Accordingly, Plaintiff's Count 6 should be dismissed as to Defendant HSBC, and Plaintiff should not be permitted to proceed on Count 6 against the proposed defendants.

### Count 7 – Robo-Signing

In Count 7, Plaintiff recites the contents of a series of letters he received from SLS in September and October 2016, prior to the foreclosure.  (Docket no. 21-9 at 11–12.)  Apparently based on his belief that these letters were "robo-signed," he claims that "[t]his a violation of federal law," and that statements in the letters were made "with the intent to defraud."  (*Id.* at 11.)

Courts in this district have held that bare allegations that robo-signers were used to sign documents are insufficient to state a claim of fraud.  *See Adams v. Springleaf Fin. Serv./AIG*, No. 12-cv-10308, 2012 WL 2905279, at *7 (E.D. Mich. July 16, 2012) (citing *McCann v. U.S. Bank, N.A.*, No. 11-14804, 2012 WL 1902481, at *15 (E.D. Mich. May 25, 2012); *Block v. BAC Home Loans Servicing LP*, No. 11-11181, 2012 WL 2031640, at *4 (E.D. Mich. June 6, 2012)). Plaintiff has not provided sufficiently detailed allegations supporting his claim that a "robo-signer" was used, nor has he explained how the letters sent by SLS otherwise constitute fraud. Plaintiff's Count 7 should therefore be dismissed as to Defendant HSBC, and Plaintiff should not be permitted to proceed on Count 7 against the proposed defendants.

### Count 8 – Breach of Contract/Wrongful Foreclosure Sale

In Count 8, Plaintiff alleges that "[t]he Defendants never completed the required federal and state legal documentation to transfer the loan and servicing of the loan prior to the wrongful foreclosure sale," and that Defendants "claimed that they were not aware of the

incomplete legal paperwork until the Plaintiff completed investigation that has not resolved the ownership and servicing status by Specialized Loan Servicing LLC, Computershare NA and HSBC Bank USA, National Association." (Docket no. 21-9 at 12.) Plaintiff vaguely asserts that "[t]his misrepresentation violated federal and state law." (*Id.*)

To the extent Plaintiff is attempting to assert a claim under the state foreclosure by advertisement law, M.C.L. § 600.3204, Count 8 is duplicative of Count 1 and should be dismissed. To the extent Plaintiff is attempting to assert a violation of federal law, Count 8 also fails. Plaintiff fails to cite a single federal statute or explain how the statute was violated. Simply claiming that Defendants' actions "violated federal . . . law" is insufficient to state a claim. Count 8 should be dismissed as to Defendant HSBC, and Plaintiff should not be allowed to proceed on Count 8 as to the new proposed defendants.

### Count 9 – Negligent Misrepresentation

In Count 9, Plaintiff alleges that "[t]he Defendants were negligent in updating required federal and state documents prior to the wrongful foreclosure sale since the Defendants were not aware of improper documentation until the Plaintiff raised the issue and started the investigation." (Docket no. 21-9 at 13.) He also alleges that "[t]he Defendants are negligent in not filing the proper legal paperwork for recording in the Register of Deeds office in Oakland County, MI and in MERS prior to the wrongful foreclosure sale. Also, the transfer of title was not completed prior to the wrongful foreclosure sale." (*Id.*)

To establish negligent misrepresentation, a plaintiff must show that he "justifiably relied to his detriment on information prepared without reasonable care by one who owed [him] a duty of care." *Law Offices of Lawrence J. Stockler, P.C. v. Rose*, 436 N.W.2d 70, 79 (Mich. Ct. App. 1989).

Plaintiff fails to identify what information he relied upon to his detriment.  It appears that the basis for Count 9 is that the information in MERS and in the Oakland County Register of Deeds did not accurately reflect who his loan servicer was at the time of his foreclosure.  He does not, however, allege that he made any payments to the wrong entity, or took any other action to his detriment, as a result of any alleged inaccuracies in these records.  Count 9 should be dismissed as to Defendant HSBC, and Plaintiff should not be allowed to proceed on Count 9 against the proposed defendants.

### Count 10 – Intentional Infliction of Emotional Distress and Anxiety

In Count 10, Plaintiff alleges that he was "constantly harassed by real estate companies, scam companies and law firms trying to take advantage of the Plaintiff due to the wrongful foreclosure sale."  (Docket no. 21-9 at 13.)  He alleges that Defendant HSBC and the proposed new defendants "were aware of the wrongful foreclosure activity prior to the sale on November 15, 2016 and intentionally failed to correct the problem until the Plaintiff flagged the issues." (*Id.*)  Plaintiff claims that he "was hospitalized due to a brain injury caused by the unbearable stress of illegal activity and had to undergo a number of medical examinations which resulted in the use of strong medications to reduce stress, anxiety and sleeplessness."  (*Id.* at 14.)

To establish a claim of intentional infliction of emotional distress ("IIED"), a plaintiff must show: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress."  *Lewis v. LeGrow*, 670 N.W.2d 675, 689 (Mich. Ct. App. 2003) (citations omitted).  Outrageous conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Andrews v. Prudential Sec., Inc.*, 160 F.3d 304, 309 (6th Cir. 1998) (citation omitted).  "Whether the offending conduct is extreme

and outrageous is initially a question of law for the court." *Van Varous v. Burmeister*, 687 N.W.2d 132, 142 (Mich. Ct. App. 2004), *overruled on other grounds by Odom v. Wayne Cnty.*, 760 N.W.2d 217 (Mich. 2008).  "The threshold for showing extreme and outrageous conduct is high." *Id.*

The basis for Plaintiff's IIED claim is that Defendant HSBC foreclosed on his property while Plaintiff was attempting to modify his mortgage loan.  According to the documents Plaintiff attaches to his Response to Defendant HSBC's Motion to Dismiss, during the time period between April 2015 and November 2016, Plaintiff requested "loss mitigation assistance" from SLS four times.  (*See* docket no. 14 at 51–53.)  Plaintiff was informed that he needed to submit additional documentation to determine whether he qualified for the assistance. Eventually, Plaintiff was approved to participate in the Unemployment Forbearance Program.  In the middle of that program, Plaintiff apparently sent a letter requesting that the program be extended, which SLS "inadvertently identified as a new complete loss mitigation application." (*Id.* at 52.)  Because SLS never received all of the documents required for a "complete loss mitigation application," Plaintiff's request was considered incomplete and SLS simply terminated its "review" of Plaintiff's request for an extension of the Unemployment Forbearance Program.  (*Id.*)  The Unemployment Forbearance Program then apparently ended, Plaintiff was still unable to make his loan payments, and HSBC foreclosed on the property.

At worst, it appears SLS neglected to inform Plaintiff that it would not honor his request to extend the Unemployment Forbearance Program.  As stated above, under Count 2, Plaintiff *may* have a "dual tracking" claim against the proposed defendants SLS, Computershare USA, and JPMorgan Chase Bank.  However, none of the actions described in Plaintiff's proposed amended complaint or in the documents attached to Plaintiff's Response to Defendant HSBC's

Motion to Dismiss constitute the type of conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Andrews*, 160 F.3d at 309 (citation omitted).

Accordingly, Count 10 should be dismissed as to Defendant HSBC, and Plaintiff should not be permitted to proceed on Count 10 against the proposed defendants.

### Count 11 – "Violation of Federal and State Statutes"

In Count 11, Plaintiff alleges that Defendant HSBC and the proposed defendants violated: (1) the "Consumer Financial Protection Bureau," (2) "Dodd-Frank Wall Street Reform Title X," (3) the "Home Affordable Modification Program," (4) the "Office of the Comptroller of the Currency," (5) the "Real Estate Settlement Procedures Act," (6) the "National and State Mortgage Settlements," (7) "The Fraud Enforcement and Recovery Act," and (8) the "Truth in Lending Act." (Docket no. 21-9 at 16.) Some of these claims are duplicative of claims asserted in other counts in Plaintiff's proposed amended complaint, and are addressed elsewhere in this Report and Recommendation. The remaining claims fail because Plaintiff does not provide any factual allegations or even a brief explanation as to how these statutes/government programs were violated. Accordingly, Count 11 should be dismissed as to Defendant HSBC, and Plaintiff should not be permitted to proceed on Count 11 against the proposed defendants.

### Count 12 – Breach of Covenant of Good Faith and Fair Dealing

Count 12 provides, in its entirety:

> Insurers, employers, banks, parties to contracts, lawyers, and the like customarily deal fairly and in good faith with their customers, employees, clients, policy holders, and business associates. That conduct is normally characterized by open, forthright communication, reasonable, non-arbitrary and non-capricious behavior, where the parties respect the objectives of the other and do not act to deprive the other of the right to benefit from the relationship. When the parties

20

begin to act with ulterior motives and disregard the rights of the other party, they open themselves up to charges of bad faith dealing.  As has been seen, such conduct will not easily withstand the scrutiny of courts and jurors, and if the plaintiff can prove that the defendant acted with malice, oppression, or fraud, the penalty may be very heavy.

The Plaintiff, through discovery and argument, will demonstrate that the Defendants did not engage in fair dealing.

(Docket no. 21-9 at 17.)  Plaintiff's vague and general allegations are insufficient to state a claim against Defendant HSBC or any of the proposed defendants.  Moreover, as Defendant HSBC points out, Michigan "does not recognize an independent claim for breach of a covenant of good faith and fair dealing."  *Burrell v. CitiMortgage, Inc.*, No. 12-14081, 2014 WL 1464441, at *7 (E.D. Mich. April 15, 2014) (citing *Selakowski v. Fed. Home Loan Mortg. Corp.*, No. 13-12335, 2014 WL 1207874, at *10 (E.D. Mich. Mar. 24, 2014); *Fodale v. Waste Mgmt. of Mich., Inc.*, 718 N.W.2d 827, 841 (Mich. Ct. App. 2006)).

Accordingly, Count 12 should be dismissed as to Defendant HSBC, and Plaintiff should not be permitted to proceed on Count 12 as to the proposed defendants.

### Count 13 – Slander of Credit

In Count 13, Plaintiff alleges that "Defendants" slandered his credit by telling him that he "had to be at least 3 months behind in payment to seek relief for a loan modification," and by wrongfully foreclosing his mortgage.  (Docket no. 21-9 at 17.)  As Defendant HSBC points out, courts in this district and in the Western District of Michigan have consistently refused to recognize "slander of credit" as a cause of action.  *See Judkins v. HSBS Mortg. Servs.*, No. 13-cv-12357, 2014 WL 1260136, at *7 (E.D. Mich. March 26, 2014) ("The slander of credit claim should be dismissed because no such cause of action has been recognized under Michigan law."); *Yopp v. Bank of America*, No. 13-12556, 2014 WL 902854, at *4 (E.D. Mich. March 7, 2014) ("Plaintiff does not allege statutory authority to support his claim of slander of credit

arising from a mortgage foreclosure.  Several courts have declined to recognize such a claim.");

*Gathing v. MERS, Inc.*, 1:09-cv-07, 2010 WL 889945, at *18 (W.D. Mich. March 10, 2010);

*Robbins v. MERS, Inc.*, No. 1:09-cv-295, 2009 WL 3757443, at *7 (W.D. Mich. Nov. 9, 2009).

Plaintiff alleges no facts or legal theories to distinguish his "slander of credit" claim from those

dismissed in these cases.

Accordingly, Count 13 should be dismissed as to Defendant HSBC, and Plaintiff should

not be permitted to proceed on Count 13 against the proposed defendants.

### D.     Conclusion

For the above-stated reasons, it is recommended that Plaintiff's Motion to Amend (docket

no. 21) be **GRANTED**.  If the Court accepts this recommendation, Plaintiff should be ordered to

file his Proposed Amended Complaint at docket no. 21-9 (with any applicable exhibits) as a

separate docket entry within seven days of the Court's decision, and should be ordered to serve

the new defendants (Specialized Loan Servicing LLC, Computershare USA, and JPMorgan

Chase Bank, NA) within 90 days of the Court's decision, pursuant to Federal Rule of Civil

Procedure 4(m).

It is further recommended that Defendant HSBC's Motion to Dismiss (docket no. 9) be

**GRANTED IN PART and DENIED IN PART**.  Specifically, to the extent Defendant HSBC

seeks dismissal of all claims against it, the Motion should be granted.  To the extent Defendant

HSBC seeks dismissal of the matter in its entirety, the Motion should be denied, as the

undersigned recommends that Plaintiff be permitted to proceed against Specialized Loan

Servicing LLC, Computershare USA, and JPMorgan Chase Bank, NA on Counts 2 and 5 of his

proposed amended complaint.

## III.     NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: July 12, 2017                    s/ Mona K. Majzoub
                                        MONA K. MAJZOUB
                                        UNITED STATES MAGISTRATE JUDGE

**<u>PROOF OF SERVICE</u>**

        I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated:  July 12, 2017         <u>s/ Lisa C. Bartlett</u>
                                  Case Manager